UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN MCGEE,

     Plaintiff,

v.                                                    Case No.: 8:25-cv-00868-JLB-NHA

PROGRESSIVE SELECT
INSURANCE COMPANY,

     Defendant.

_____/

## ORDER

Plaintiff John McGee moves to compel Defendant Progressive Select Insurance Company to produce documents responsive to his fourteenth request for production. Doc. 32. Specifically, Plaintiff seeks an order compelling Progressive to produce, for the years 2013 through 2018, documents relating to the training, duties, compensation, and performance of Jennifer McFarland, a Progressive attorney who represented Plaintiff when he was sued in state court for a car accident. *Id.* After consideration, I deny the motion.

### I.   Background

This is a bad-faith insurance action. Plaintiff's car struck and injured Ricardo Morales, who then sued Plaintiff in state court. Compl., Doc. 1-1 ¶¶ 6-11. Plaintiff had a Progressive liability policy that provided up to $50,000 per person in bodily injury coverage. *Id.* ¶ 8; Def.'s Resp., Doc. 33 p. 6. Before suing

Plaintiff, Mr. Morales offered to settle any claim against him for $50,000. Mtn., Doc. 32 ¶ 4; Doc. 33 p. 6. Defendant counter-offered $24,400, which Morales refused. Doc. 32 ¶¶ 4-5; Doc. 33 p. 6. In July 2018, Morales sued Plaintiff, and Defendant subsequently assigned McFarland, an attorney employed by Progressive,[1] to defend Plaintiff in the action. Doc. 32 ¶¶ 5-6; Doc. 33 p. 6. Records produced by Defendant indicate that McFarland was first assigned to Plaintiff's case in August 2018, after Morales and Defendant had rejected each other's pre-suit offers. *See* Doc. 32-5 p. 24.

In July of 2019, Defendant increased its settlement offer to Mr. Morales to the $50,000 policy limit. Doc. 1-1 ¶ 18; Doc. 33 p. 7. McFarland conveyed the increased settlement offer after receiving direction and authorization from other Progressive employees to do so. *See* Doc. 32-5 pp. 10-11. Morales declined the $50,000 offer, and the case proceeded to trial. Doc. 1-1 ¶ 19; Doc. 33 p. 7. Within a month of Morales' refusal of Defendant's final settlement offer, McFarland was removed from the case, and Defendant assigned Plaintiff's defense to outside counsel. *See* Doc. 32-5 p. 10. The state court ultimately entered a judgment against Plaintiff for $856,002.50. Doc. 32 ¶ 2.

---

[1] Defendant clarifies in a footnote of its response to the motion that while McFarland was employed by "the Progressive Corporation," she was not technically an employee of Progressive Select Insurance Company, which is an underwriting company within the Progressive Corporation and the only defendant in this lawsuit. *See* Doc. 33 p. 6 n. 4. Defendant does not discuss this distinction further or rely on it as a basis for its position on the motion.

In this lawsuit, Plaintiff sues Defendant for breach of contract for refusing to pay Morales's attorney's fees which the state court assessed against Plaintiff, and for bad faith in Defendant's "handling and defense of Morales's claims against" Plaintiff. *Id.* ¶ 31. Plaintiff's bad faith claim specifically alleges that Defendant acted in bad faith by not settling Morales's claims within the policy limit when it had the opportunity, and by "failing to provide an adequate defense of the claims made against" Plaintiff, among other allegations. *Id.* Plaintiff's complaint does not allege specific facts showing in what way the defense of claims against Plaintiff was inadequate.

On June 5, 2025, Plaintiff served Defendant with his first requests for production. *Id.* p. 1. Those requests included Request 14, which reads, in relevant part:

> **REQUEST NO. 14:** DOCUMENTS, regardless of the name of the file in which the responsive material is kept, for the years [2015] through 2018, concerning the job performance of . . . (7) Jennifer McFarland . . .
>
> This request includes any documents relating to:
>
> a. the identified individuals' training, education, experience, licensure, job positions and compensation (including profit sharing, bonuses or any performance-based compensation);
>
> b. the identified individuals' responsibilities and duties associated with those job positions, and
>
> c. any complaints, commendations, reviews, assessments or evaluations of the performance of the identified individuals.

*Note: Plaintiff is not seeking the production of social security numbers, telephone numbers, drug test results or any protected health information.*

Doc. 32-2 pp. 8-9.[2]

On July 28, Defendant responded to Request 14, agreeing to produce some of the requested materials, but refusing to produce any responsive documents relating to McFarland. *Id.* pp. 9-10. In objecting to the request, Defendant asserted (as it does in greater detail in its opposition to the present motion) that McFarland's employment records are irrelevant to Plaintiff's bad faith claim and/or disproportionate to the needs of the case, because McFarland is a staff attorney rather than a claims-handling employee, and because the quality of McFarland's legal defense is not at issue. *Id.* Indeed, Plaintiff confirms "McFarland's conduct is not being evaluated for legal malpractice," nor for "violating a professional duty to McGee." Doc. 32 pp. 13, 17.

Plaintiff filed the present motion on January 6, 2026, seeking an order compelling Defendant to produce documents responsive to Request 14. Doc. 32.

## II.   Legal Standard

The Court has "broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs,*

---

[2] Request 14 also includes requests for records of eight other Progressive employees, but Plaintiff's motion pertains only to McFarland's employment records. *See* Doc. 32 p. 4 n. 1. Additionally, the original request sought records dating back to 2013, but Plaintiff has agreed to narrow the timeframe to the period between 2015 and 2018. *Id.* p. 4 n. 2.

4

*Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). In discovery, a party may seek information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and information "need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). Federal courts favor a liberal interpretation of the Federal Rules "to allow for robust discovery." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021).

Still, "limitations necessarily arise" when a discovery request "touches upon the irrelevant." *Id.* at 1277 (quoting *Hickman v. Taylor*, 329 U.S. 495 (1947)). Under Rule 26, "the court has the authority to confine discovery to the claims and defenses asserted in the pleadings." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012) (cleaned up). Courts must also ensure that discovery is "proportional to the needs of the case," *see* Fed. R. Civ. P. 26, and, where relevance is questionable, courts may conclude that "the burden and expense of the proposed discovery outweighs its limited potential benefit." *See In re Brinker Data Incident Litig.*, 337 F.R.D. 424, 425 (M.D. Fla. 2020) (invoking FED. R. CIV. P. 26(b)(1)'s proportionality requirement to prohibit discovery with "little relevance" to the claims in the case); *see also id.* (noting that the 2015 amendment to Rule 26(b)(1) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.") (quotations omitted).

5

## III.    Discussion

In his motion to compel, Plaintiff does not articulate a specific theory of how McFarland's employment records might impact claims or defenses in this case. Rather, Plaintiff broadly argues that documents about McFarland are relevant to his bad faith claim, because "Progressive's entire course of conduct in investigating, negotiating, evaluating and defending the underlying claim is at issue." Doc. 32 p. 7. He further claims that McFarland "participated in settlement evaluation and negotiation, collaborated with the adjusters, and shaped Progressive's overall handling of the claim." *Id.* p. 16. Citing numerous cases in which other federal courts have allowed discovery into the personnel records of insurance company employees, Plaintiff argues that discovery of McFarland's employment records will allow him to determine whether Defendant "failed to properly supervise, control, oversee or direct" McFarland, and whether it "actually encouraged or incentivized" McFarland to mishandle Plaintiff's claim. *Id.* p. 11.

Defendant challenges Plaintiff's relevance showing. Doc. 33. Defendant notes McFarland was not a claims adjuster and did not determine the acceptance or amount of settlement offers. *Id.* p. 11. Plaintiff does not bring a claim for breach of contract based on a "failure to defend" the state case. *Id.* p. 14. And, in any event, insurers are not vicariously liable for employee-attorneys' legal decisions, and Plaintiff could thus only pursue such complaints

6

by bringing a malpractice claim against McFarland herself. *Id.* p. 18. For these reasons, and considering the private nature of employments records generally (*see id.* p. 10 n. 9), Defendant maintains that it should not be required to produce McFarland's employment records because such discovery is disproportionate to the needs of this case, if not entirely irrelevant.

"Under the good faith duty, the insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Woods v. Progressive Am. Ins. Co.*, 159 F.4th 837, 841 (11th Cir. 2025) (cleaned up). "In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004) (citation omitted). In this context, federal courts often permit discovery of personnel records when such documents may reveal evidence of an insurer's knowledge or control of the competence or shortcomings of the "employees responsible for adjusting a claim," or when "the documents could show that compensation was tied to the amount of payments made on claims handled by any employee." *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 672 (S.D. Fla. 2013) (quotation omitted). Thus, the records are generally relevant in a bad faith action only as

to those employees who had "more than incidental or minimal involvement in handling the claim." *Id.* at 673.[3]

Here, Plaintiff has not demonstrated that McFarland's employment records are relevant or that his request for them is proportional to the needs of this case.

Plaintiff presents nothing to suggest that McFarland was involved in deciding whether Defendant would reimburse Plaintiff for the state court's assessment of Morales's attorney's fees against Plaintiff.

Nor has Plaintiff provided facts showing that McFarland was substantively involved in claims handling and settlement decisions. True, Plaintiff broadly asserts that McFarland was "deeply embedded in the claims-handling process," including "directing or implementing settlement strategy," citing for support a "Claims Summary" produced by Defendant. *See* Doc. 32 p. 13. But Plaintiff does not specify which aspects of the Claims Summary are

---

[3] The Court further notes that, while employers cannot vicariously assert their employees' privacy rights in resisting discovery of personnel files, "[t]his does not necessarily mean, however, that such important nonparty rights should not be considered, or that the right to privacy and the right to know should not be weighed, during the discovery process." *Alterra Healthcare Corp. v. Est. of Shelley*, 827 So. 2d 936, 944 (Fla. 2002); *see Maharaj*, 289 F.R.D at 673 (citing *Alterra* and concluding that "the need to protect constitutional privacy rights inherent in personnel files outweighs the need for such discovery under the facts of this case.").

meant to support this assertion,[4] and a review of the document undermines, rather than supports, Plaintiff's assertion.

The Claims Summary shows that McFarland only became involved in the case in August of 2018, after the exchange of pre-suit settlement offers between Plaintiff and Morales. Doc. 32-5 p. 24. Subsequent entries in the Claim Summary show that McFarland worked to investigate and litigate Morales' case against Plaintiff, but do not show she participated in the decision-making process regarding the nature and amount of Progressive's settlement offers to Morales. For example, a "case comment" entered by McFarland in May of 2019 shows McFarland taking direction from Progressive's claims department on settlement negotiations: "Jackie [Owens, another Progressive employee] told me that claims [department] didn't just want to throw the $50K out there but that if PA tells them that they are not willing to accept anything less than the $50k policy limits then she would immediately tender the $50k." *Id.* p. 11. Only after Jackie Owens had herself called Morales's attorney and verbally offered to settle the suit for $35,000 did

---

[4] In any case, the Court is under no obligation to search Plaintiff's exhibits for the supporting evidence he suggests they contain. *See Chavez v. Sec. Fla. Dept. of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him.").

McFarland take the authorized action of offering $50,000 to settle Morales' claims in June of 2019. *Id.* p. 10. The Claims Summary shows that, when Morales refused that offer, Plaintiff's defense was transferred to outside counsel, and McFarland's involvement in the case ended. *Id.* The Claims Summary thus does not show that McFarland was more than minimally involved in directing or implementing the settlement strategy in the underlying action.

And absent McFarland's substantive involvement in claims handling, Plaintiff offers nothing to suggest that McFarland's actions are relevant to his claims, let alone that her employment records are relevant. Plaintiff's bad faith claim does include a broad and unspecified allegation that Defendant acted in bad faith by "failing to provide an adequate defense of the claims made against McGee." Doc. 1-1 p. 7. But this conclusory allegation cannot carry the day here. Again, Plaintiff is careful to clarify that "McFarland's conduct is not being evaluated for legal malpractice," and that "the issue here is not whether an attorney violated a professional duty to McGee." Doc. 32 pp. 13, 17. He does not allege that McFarland was incompetent or unqualified or offer facts suggesting that she acted in a manner that would prompt such a concern. Nor does he claim, or offer facts suggesting, that Defendant incentivized or trained her to defend Plaintiff poorly.

10

Without offering facts or a plausible theory of how McFarland's conduct relates to his claims, Plaintiff is not entitled to her personnel records.

For these reasons, Plaintiff's motion to compel (Doc. 32) is denied.

DONE and ORDERED on February 22, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

11