UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN MCGEE,

     Plaintiff,

v.                                                                  Case No.: 8:25-cv-00868-JLB-NHA

PROGRESSIVE SELECT
INSURANCE COMPANY,

     Defendant.

_____/

## **ORDER**

Defendant Progressive Select Insurance Company moves to compel non-parties Fran Haasch Law Group (FHLG) and Barnes Trial Group (BTG) to produce documents withheld in response to subpoenas duces tecum, and for the Court to conduct an in-camera review of the withheld documents. Docs. 39, 40. After consideration, I deny the motion as to FHLG (Doc. 39) and partially grant and partially deny the motion as to BTG (Doc. 40).

### I.    Background

This is a bad-faith insurance action. Plaintiff's car struck and injured Ricardo Morales, who then sued Plaintiff in state court. Compl., Doc. 1-1 ¶¶ 6-11. Plaintiff had a Progressive liability policy that provided up to $50,000 per person in bodily injury coverage. *Id.* ¶ 8; Def.'s Resp., Doc. 33 p. 6. Before suing Plaintiff, Morales retained FHLG and offered to settle any claim against him

for $50,000, which offer was contingent on Progressive meeting various other demands. Doc. 34-1. Defendant counter-offered $24,400, which Morales refused. Doc. 32 ¶¶ 4-5; Doc. 33 p. 6. FHLG subsequently referred the case to BTG which filed a personal injury suit against Plaintiff on Morales' behalf in July 2018. Doc. 39 ¶ 2.

In July of 2019, Defendant increased its settlement offer to Morales to the $50,000 policy limit, which Morales declined. Doc. 1-1 ¶ 18-19; Doc. 33 p. 7. The state court ultimately entered and excess judgment against Plaintiff for $856,002.50. Doc. 32 ¶ 2.

In this lawsuit, Plaintiff sues Defendant, claiming Defendant breached the insurance policy contract by refusing to pay Morales's attorney's fees which the state court assessed against Plaintiff, and that Defendant acted in bad faith in its "handling and defense of Morales's claims against" Plaintiff. Doc. 1-1 ¶ 31. Plaintiff specifically alleges that Defendant acted in bad faith by not settling Morales's claims within the policy limit when it had the opportunity. *Id.*

In May of 2025, Defendant served FHLG and BTG with subpoenas duces tecum seeking documents related to Morales' pre-suit demands and lawsuit against Plaintiff.[1] Doc. 42 p. 2; Doc. 43 p. 2. Defendant argues these documents

---

[1] In its motions, Defendant limits each of its requests to documents dated on or before June 10, 2019.

will show whether Morales would have, in fact, settled his claims within Progressive's policy limits.

In response to the subpoenas, both FHLG and BTG provided some responsive documents. Among the documents produced by BTG was a redacted version of the contingency fee agreement between Morales and BTG, which excised portions titled "Division of Fees and Responsibility Between Law Firms," "Client's Responsibilities," and "Settlement." *Id.* p. 3. BTG claims the redacted material is protected by both the attorney-client privilege and the work-product doctrine. Doc. 42 p. 10.

Both FHLG and BTG also provided privilege logs, claiming attorney-client privilege and work-product protection over other responsive documents that they withheld altogether. Doc. 39 p. 3–4; Doc. 40 p. 4–5. Additionally, BTG claimed a June 10, 2019 document was subject to a mediation privilege. Doc. 40 pp. 4–5.

Following the productions, Defendant filed the present motions seeking an *in camera* review by this Court of the withheld documents and an order compelling FHLG and BTG to produce any improperly withheld documents, as well as certain documents that may be presumptively protected by work-product privilege. Docs. 39, 40.

3

## II.   Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).

Under Rule 45, parties in a civil action may use subpoenas to request documents and other materials from non-parties. FED. R. CIV. P. 45(a)(1)(D). A subpoena recipient may withhold production of responsive material under a claim of privilege by "expressly" claiming a privilege and describing the nature of the withheld material with enough specificity to allow the issuer to assess the claim. FED. R. CIV. P. 45(e)(2)(A).   If a subpoena recipient objects, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." FED. R. CIV. P. 45(d)(2)(B).

"Rule 45(d)(3) provides several potential grounds for quashing [a third-party] subpoena: some of them mandatory and some discretionary. Among the mandatory grounds, a subpoena must be quashed if it requires disclosure of 'privileged or other protected matter[, if no exception or waiver applies]' or if the subpoena 'subjects a person to undue burden." *Jordan v. Commr., Mississippi Dept. of Corrections*, 947 F.3d 1322, 1335 (11th Cir. 2020) (quoting FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv)). Additionally, Rule 45(d)(1) imposes a duty on the serving party to "take reasonable steps to avoid imposing undue burden or expense" on subpoena recipients.

4

### III.    Discussion

Both of Defendant's motions seek in-camera review of the withheld documents, and an order overruling the non-parties' work-product objections. While Defendant acknowledges that the non-parties' may likely claim attorney-client privilege over some responsive documents, Defendant also asserts that FHLG and BTG are withholding certain documents to which the attorney-client privilege cannot apply. Doc. 39 pp. 16-18; Doc. 40 pp. 18-20. Defendant further argues that, even if privilege applied, the Court should compel production of some of the presumptively protected documents, because Defendant needs them to show Morales's (dis)inclination to settle within the policy limits, information which Defendant asserts it cannot obtain in any other way. *See generally* Docs. 39, 40.

Defendant also seeks an order overruling BTG's mediation objection over a document, and compelling BTG to produce an unredacted version of its contingency fee agreement with Morales. Doc. 40 pp. 11-12, 18.

I address each issue in turn.

### a.  *In Camera* Review

Defendant requests the Court perform an *in camera* inspection of the documents FHLG and BTG have withheld to determine if the claimed privileges apply. In its motion, Defendant argues that it "believes it will be more efficient for this Court to conduct an *in camera* inspection of the relevant

documents" than it would be to request another amended privilege log from FHLG and BTG to address any alleged deficiencies. Doc. 39 p. 3 n. 1; Doc 40 p. 4 n. 1. Defendant does not specify how it believes the non-parties' amended privilege logs are deficient. Rather, Defendant broadly asserts that the privilege logs are deficient and therefore warrant *in camera* review by this Court to determine "whether the asserted privileges apply to the documents at issue." Doc. 39 p.4; Doc. 40 p. 5.

"*In camera* review is not appropriate merely because a party objects to the assertions of privilege. And it is not a basis upon which any party can shift a burden to the Court that they should bear themselves." *United States v. Davita, Inc.*, 301 F.R.D. 676, 681 (N.D. Ga. 2014) (citing *U.S. v. Zolin,* 491 U.S. 554, 571–572 (1989)); *see also MapleWood Partners, L.P. v. Indian Harbor Ins.*, 295 F.R.D. 550, 627 (S.D. Fla. 2013) ("The Court does not conduct an *in camera* review lightly, nor simply because a party requests it."). Instead, *in camera* review is ordinarily warranted only upon an adequate showing that a claim of privilege may have been wrongly applied, and even then, it is discretionary. *Davita, Inc.*, 301 F.R.D. at 681 (noting that a court has discretion to perform an *in camera* review where there is a "sufficient evidentiary showing that an issue exists regarding the application of a privilege").

Here, upon review of BTG's and FHLG's amended privilege logs (Docs. 39-4, 40-5), the Court does not find that either are facially deficient, outside of

6

the discretely misapplied privileges discussed below. Both logs identify the type of document withheld and the date and nature of the communication or record. Absent further argument from Defendant on this matter, the Court concludes that the logs are sufficiently detailed to "enable the parties to assess the [privilege] claim[s]." *See* Fed. R. Civ. P. 45(e)(2)(A).

In the absence of any demonstrated prolific or systemic deficiency, Defendant's request that the Court conduct *in camera* review to quality check the privilege logs is inappropriate and, therefore, denied. Nonetheless, the Court addresses some of Defendant's discrete privilege concerns.

### b.  Mediation Privilege

First, Defendant argues that that "BTG cannot assert mediation privilege against Progressive, a participant in the underlying mediation." Doc. 40 p. 18 n. 3. BTG does not directly address this argument in its response, but its privilege log does cite a mediation privilege–alongside the attorney-client privilege and work-product doctrine–as a basis for withholding one specific document relating to the mediation between Morales and Defendant in the underlying action. *See* Doc. 40-5 p. 2. The privilege log describes this document as: "Correspondence to client and BTG attorneys regarding mediation and outcome of same." *Id.*

Section 44.405 of the Florida Statutes provides that "all mediation communications shall be confidential," and that "A mediation participant shall

7

not disclose a mediation communication to a person other than another mediation participant or a participant's counsel."

Here, BTG and Progressive were involved in the underlying mediation. By the plain text of the applicable statute, the mediation privilege does not apply against another participant to the mediation. *See Strong v. GEICO Gen. Ins. Co.*, 2017 WL 1006457, at *4 (M.D. Fla. Mar. 15, 2017) (overruling mediation privilege objections and compelling the plaintiff to answer questions at deposition regarding settlement offers made at mediation); *Altheim v. GEICO General Insurance Co.*, 2010 WL 5092721 (M.D. Fla. Dec. 8, 2010) (same). Accordingly, were the mediation privilege the sole basis for BTG's withholding of the document at issue, it would not be sufficient.

However, based on BTG's description of the withheld document as containing direct communications between Morales and BTG attorneys only, the attorney-client privilege appears to apply. So, Defendant's argument as to the mediation privilege appears moot. Defendant's motion to compel the document withheld based in part on the mediation privilege is denied.

c. <u>Work-Product Doctrine</u>

Defendant requests an order compelling BTG and FHLG to produce the documents over which they claim work-product protection, arguing that the protection is not absolute, and that it should be overruled in this case. Doc. 39 pp. 9-16; Doc. 40 pp. 13-18.

The work-product doctrine provides that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A). However, the work-product protection is not absolute; materials otherwise exempt from discovery as work-product may nonetheless be discovered if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii). "Substantial need cannot be overcome simply with an argument that documents are relevant and will assist in bolstering a party's affirmative defenses. And courts must not allow parties to claim substantial need as a means to short-cut preparation of cases." *SEC v. Herrera*, 324 F.R.D. 258, 267 (S.D. Fla. 2017) (cleaned up).[2]

Here, Defendant asserts it has a substantial need sufficient to overcome the non-parties' work-product protection claims. Defendant explains that one of its primary defenses to Plaintiff's bad faith claim is that it could not have settled Morales's claim within Defendant's policy limits–as Plaintiff claims

---

[2] Because the work-product doctrine finds its source in the Federal Rules of Civil Procedure, federal law governs its application in any proceeding in federal court. *Diamond Resorts U.S. Collection Dev., LLC v. U.S. Consumer Attorneys, P.A.*, 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021).

Defendant was obligated to do–because Morales was unwilling to do so. Doc. 39 p. 13. Defendant argues that, because this is such an essential aspect of its defense, it has a substantial need for first-hand information from both law firms regarding Morales' willingness to settle. Doc. 39 p. 13; Doc. 40 p. 15. The non-parties assert, in contrast, that Defendant could obtain substantially similar information by other means, such as depositions and review of the non-protected discovery already produced by the non-parties, and that Defendant has thus not carried its burden to overcome their assertions of the work-product protection. Doc. 42 p. 8; Doc. 43 p. 8.

It is a close question whether BTG and FHLA's work-product assertions could resist Defendant's substantial-need showing. Ultimately, though, the Court need not decide this issue. In this case, the non-parties' work-product and attorney-client privilege claims are co-extensive: all of the privilege log entries which involve the work-product doctrine also invoke the attorney-client privilege. *See* Docs. 39-4, 40-5. And, as explained in the next section, BTG and FHLG have properly invoked the attorney-client privilege.

For this reason, Defendant's objection to, or request to override, work-product privilege designations is denied as moot.

d. <u>Attorney-Client Privilege</u>

Defendant also argues that the non-parties' claims of attorney-client privilege are insufficient to protect the documents they withhold. Doc. 39 pp.

16-18; Doc. 40 pp. 18-20. According to FHLG, "[t]he documents withheld by FHLG on attorney-client privilege grounds consist of confidential communications between FHLG attorneys and their client Ricardo Morales, as well as communications among FHLG attorneys regarding legal advice and strategy for representing Morales." Doc. 43 p. 4. BTG describes the documents it has withheld in the same way. *See* Doc. 42 p. 5.

Though they identify no specific documents of concern, Defendant contends that, to the extent the non-parties are withholding communications between attorneys and third parties (as opposed to clients), the attorney-client privilege does not apply, and they should be compelled to produce those documents. Doc. 39 pp. 17-18; Doc. 40 pp. 19-20. Defendant also asserts that "documents recording the **fact** that Morales was no longer willing to settle are not privileged." Doc. 39 p. 18; Doc. 40 p. 20 (emphasis in original).

Defendant appears to assert this position as part of its request to have the Court overrule improper privilege assertions the Court discovers during its *in camera* review. Because Defendant has not carried its burden to support its request for in camera review, and because Defendant does not identify specific documents of concern, the Court addresses these objections only generally.

Florida's attorney-client privilege is codified in Fla. Stat. § 90.502, which provides: "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such

11

other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(2).[3] Lawyers may invoke the privilege on a client's behalf. Fla. Stat. § 90.502(3)(e). "A communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than: 1) Those to whom disclosure is in furtherance of the rendition of legal services to the client[; or,] 2) Those reasonably necessary for the transmission of the communication." Fla. Stat. § 90.502(1)(c).

The attorney-client privilege is "not concerned with the litigation needs of the opposing party," and "there is no exception provided under section 90.502 that allows the discovery of attorney-client privileged communications where the requesting party has demonstrated need and undue hardship." *Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011) (citations and quotation marks omitted).

Here, Defendant first argues that the non-party attorneys improperly claim privilege over communications between themselves and third parties. Defendant argues that "records showing communications with treating physicians or Progressive employees would not be attorney-client privilege[d]

---

[3] In diversity cases such as this one, state law governs the application of attorney-client privilege. *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1318 (S.D. Fla. 2018).

12

because neither treating physicians nor Progressive employees were clients of BTG [or FHLG]." Doc. 40 p. 20. However, the privilege logs suggest that the privilege is being claimed over only communications between Morales, his attorneys, and law firm employees. *See* Docs. 39-4, 40-5. Further, Defendant's argument paints with too broad a brush. True, as a general rule, "conversations with third parties are not protected by the attorney-client privilege" under Florida law. *Marrero v. Rea*, 312 So. 3d 1041, 1051 (Fla. 5th DCA 2021). But, the privilege can be applied to "communications to third parties 'to whom disclosure is in furtherance of the rendition of legal services to the client' and 'those reasonably necessary for the transmission of the communication." *Beneschott v. Toptal, LLC*, — So.3d —, 2025 WL 1131733, at *2 (Fla. 6th DCA 2025) (quoting Fla. Stat. § 90.502(1)(c)); *see also Ford Motor Co. v. Hall-Edwards*, 997 So.2d 1148, 1153 (Fla. 3d DCA 2008) ("[T]he attorney-client privilege . . . protects confidential communications between a lawyer and client, as well as third persons to whom disclosure is in furtherance of the rendition of legal services and those reasonably necessary for the transmission of the communication."). Thus, while communications between Morales' lawyers and Defendant's employees would not be confidential, other communications with third parties could still be protected by the privilege if necessary to facilitate the third-party attorneys' legal service to the client.

13

Defendant next objects that the third-parties are not entitled to claim attorney-client privilege over the *facts* discussed within communications. Specifically, Defendant concedes that "the confidential communications between Morales and his attorney surrounding the strategic decision to settle or not settle and pursue litigation against Progressive's insured" are privileged, but argues that the facts contained within those communication are not protected by the attorney-client privilege. Doc. 39 p. 17–18.   But this concept is of no moment when Defendant has sought to compel the communications themselves.

While it is true that, in Florida, the attorney-client privilege "does not protect facts known by the client independent of any communication with the lawyer, even if the client later tells the fact to the lawyer," that does not mean that any communication discussing a fact loses the protection of attorney-client privilege. *Coffey-Garcia v. S. Miami Hosp., Inc.*, 194 So. 3d 533, 537 (Fla. 3d DCA 2016). Thus, where Defendant subpoenas documents from Morales' law firms, the facts within the confidential communications cannot be separated from the communications themselves. Defendant may not discover attorney-client communications solely because it claims to be inquiring about "the **fact** that Morales was no longer willing to settle." *See* Doc. 39 p. 18; Doc. 40 p. 20.

14

In sum, while the Court may agree to certain principles of law espoused by Defendant, Defendant fails to show that attorney-client privilege has been improperly applied to any broad category of documents.

e. BTG's Fee Agreement

Defendant also moves to compel BTG to produce an unredacted version of its fee agreement with Morales. Doc. 40 pp. 11-12. BTG responds that the redacted portions of the fee agreement "contain information that is protected by the attorney-client privilege and work doctrine," such as "information about the client's decision-making authority and the attorney's role in settlement negotiations," "information about the scope of representation and the attorney-client relationship," and "the internal allocation of work and fees between co-counsel." Doc. 42 p. 10.

"The law in this circuit is that matters involving the receipt of fees from a client are not generally privileged." *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982). Here, BTG seeks to protect the general terms of its contractual a relationship with the client. Thus, the Court is not persuaded by BTG's objection to producing the full agreement.

Further, the information that BTG seeks to protect appears to be directly relevant to Defendant's defense that it could not have settled with Morales within the policy limits. BTG redacted terms regarding "the client's decision-making authority and the attorney's role in settlement negotiations," and a

15

"Division of Fees" section. Doc. 42 p. 10. Both of these sections bear on the

question of whether Morales may have been constrained or disincentivized to

settle the underlying lawsuit.

BTG shall produce the full, unredacted fee agreement. [4]

## IV.    Conclusion

For the reasons stated above:

1) Defendants' request for *in camera* review of both non-parties' withheld documents is DENIED;

2) Defendant's motion to compel BTG to produce documents responsive to the subpoena (Doc. 40) is granted in part and denied in part:

---

[4] While Defendant's motions were pending, BTG and FHLA filed Notices of Supplemental Authority (Docs. 51, 52) alerting the Court to a recent Florida Court of Appeals decision, *Kessler v. Progressive*, No. 2D2025-1038, 2026 WL 885992 (Fla. 2d DCA Apr. 1, 2026). The Court has reviewed the decision and finds it consistent with the reasoning in this order. To the extent *Kessler* reaffirms the principle that Florida's attorney-client privilege applies with equal force in an insurance bad-faith action as in any other action, *see id.* at *4, the Court agrees and finds *Kessler* to be persuasive authority in support of the parts of this order addressing the attorney-client privilege. *Kessler* is also partially persuasive authority for its affirmation of attorneys' work-product assertions in a somewhat similar discovery context, thought the Court notes that the present order interprets, as it must, the work-product doctrine found in the Federal Rules, while *Kessler* interpreted Florida's own (similar but separate) statutory and common law work-product protections. *See id.* at *4.

16

  a. The request to compel BTG to produce the full, unredacted contingency fee agreement with Morales is GRANTED. BTG shall produce the document on or before April 17, 2026;

  b. The motion is otherwise DENIED;

3) Defendant's motion to compel FHLG to produce additional documents responsive to the subpoena (Doc. 39) is DENIED.

DONE and ORDERED on April 10, 2026.

**NATALIE HIRT ADAMS**
United States Magistrate Judge